NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

21-157

JEREMY SCOTT CHAPMAN

VERSUS

KAYLA NICOLE CHAPMAN

**********

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. C15210
HONORABLE CRAIG STEVE GUNNELL, DISTRICT JUDGE

**********

SHARON DARVILLE WILSON
JUDGE

**********

Court composed of Shannon J. Gremillion, Van H. Kyzar, and Sharon Darville
Wilson, Judges.

AMENDED AND AFFIRMED.

**Jack Derrick Miller**
**Attorney at Law**
**P. O. Drawer 1650**
**Crowley, LA 70526**
**(337) 788-0768**
**COUNSEL FOR DEFENDANT/APPELLEE:**
**Kayla Nicole Chapman**

**Orelia R. Lawdins**
**Attorney At Law**
**221 East Academy, Ste. B**
**Jennings, LA 70546**
**(337) 275-5124**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
**Jeremy Scott Chapman**

**WILSON, Judge.**

Kayla Nicole Chapman (Ms. Chapman) sought child support arrearages, payment of certain medical expenses, payment of expenses for certain extracurricular activities, and a ruling that her ex-husband, Jeremy Scott Chapman (Mr. Chapman), was in contempt of court. Mr. Chapman sought a reduction in his child support obligation as well as a ruling that Ms. Chapman was in contempt of court. On August 25, 2020, the trial court signed a judgment that reduced Mr. Chapman's child support obligation, awarded arrearages to Ms. Chapman, and ordered Mr. Chapman to pay a portion of certain medical expenses and expenses for certain extracurricular activities. The trial court did not find either party to be in contempt of court. Mr. Chapman appeals. We amend the judgment to reflect the correct calculation of Mr. Chapman's child support arrearages and affirm the judgment in all other respects.

## I.

## **ISSUES**

We must decide:

1. whether the trial court erred in calculating the amount of Mr. Chapman's child support obligation and the amount of his arrearages; and

2. whether the trial court ordered Mr. Chapman to pay an incorrect share of certain medical expenses and expenses for extracurricular activities.

Mr. Chapman also alleges that the trial court erred in: (1) failing to rule on his summary motion for modification and termination of child support in an expedited manner; (2) in dismissing his claim for a modification in the child support order; and (3) in denying his rule for contempt against Ms. Chapman. These allegations relate to a judgment signed by the trial court on January 2, 2019, following the trial court's consideration of Mr. Chapman's "Motion and Order for Contempt, Modification of Custody, Modification and Termination of Support

Obligation, and Reimbursement Claims for Overpayment." "[J]udgments denying motions or rules for modification of child support awards" are treated "as final judgments subject to review on appeal." *Barton v. Barton*, 06-2032, p. 8 (La.App. 1 Cir. 8/8/07), 965 So.2d 939, 944. Mr. Chapman did not seek review of the January 2, 2019 judgment in a timely manner; therefore, these assignments of error are not properly before this court in the present appeal. Furthermore, Mr. Chapman's motion for appeal states that the August 25, 2020 judgment is the one he seeks to appeal.

Ms. Chapman also appealed the August 25, 2020, judgment. On February 9, 2021, the trial court signed a judgment dismissing Ms. Chapman's appeal for failure to pay the estimated costs of appeal. Ms. Chapman did not seek review of the dismissal of her appeal. Ms. Chapman's memorandum to this court references an answer to the appeal; however, no such answer was filed with this court, and none appears in the appellate record. For those reasons, this court does not consider Ms. Chapman's assertion that the trial court erred in denying her exception of *res judicata* with respect to Mr. Chapman's request for a reduction in his child support obligation based on Colby reaching the age of majority.[1]

## II.

## FACTS AND PROCEDURAL HISTORY

Mr. and Ms. Chapman married on April 1, 2001, in Jennings, Louisiana. Two children, Colby and Isabelle, were born of the marriage.[2] The parties separated on

---

[1] Furthermore, even though the denial of a motion for modification of a child support obligation is treated as a final judgment for appeal purposes, this court notes that *res judicata* does not apply to decrees of child custody and child support because such rulings "are always subject to modification and are thus never final" for purposes of *res judicata*. *Kaptein v. Kaptein*, 19-784, p. 3 (La.App. 4 Cir. 1/22/20), 289 So.3d 1198, 1200, *writ denied*, 20-325 (La. 6/3/20), 296 So.3d 1069, *quoting Kleiser v. Kleiser*, 619 So.2d 178, 179 (La.App. 3 Cir. 1993). "Consequently, such judgments will not bar subsequent actions brought to modify the provisions for custody and support." *Kleiser*, 619 So.2d at 179.

[2] Colby was born on August 23, 2000, and has reached the age of majority.

2

February 19, 2010, and Mr. Chapman filed a petition for divorce. On April 28, 2010, the parties entered into a consent judgment that awarded them joint custody of the children, with Ms. Chapman being designated as domiciliary parent, and set Mr. Chapman's child support obligation at $1,000.00 per month. A consent judgment of divorce was signed on April 19, 2011.

Over the years, the parties have filed several rules seeking increases and decreases in the child support obligation. On September 18, 2015, a judgment was signed that continued joint custody and fixed Mr. Chapman's child support obligation at $1,425.00 per month. The judgment also ordered that Mr. Chapman must pay: (1) seventy-eight percent (78%) of all out of pocket and customary charges for Isabelle's dance lessons and costumes; and (2) seventy-eight percent (78%) of any of the children's medical expenses not covered by insurance.

Several times in 2016 and 2018, the parties appeared before a hearing officer who recommended changes in Mr. Chapman's child support obligation based on his employment status. Several times, the parties disagreed with the hearing officer's recommendations, and, each time, a hearing was held to make determinations regarding those objections.[3]

At the time that the instant dispute arose, Mr. Chapman was ordered to pay child support in the amount of $1,626.00[4] per month pursuant to the hearing officer's recommendations on July 7, 2016, which was made the order of the court on July 18, 2016, after no request for an objection hearing was filed. Another hearing

---

[3] Louisiana Revised Statutes 46:236.5(C)(6) provides that any party who disagrees with hearing officer's recommendation may file a written objection, which shall be heard by the trial court. "Upon the filing of the objection, the court shall schedule a contradictory hearing where the judge shall accept, reject, or modify in whole or in part the findings of the hearing officer." *Id*. If no objection is timely filed, "the order shall become a final judgment of the court and shall be signed by a judge and appealable as a final judgment." La.R.S. 46:236.5(C)(7).

[4] The amount of child support was set at $1,714.00 per month until insurance was withdrawn from Mr. Chapman's wages, then the amount was reduced to $1,626.00 per month.

officer's conference was not held until March 29, 2018. At that time, the hearing officer recommended child support in the amount of $1,331.00 per month until Colby turned eighteen, at which time the amount would be reduced to $880.00 per month.[5] The hearing officer's March 29, 2018 recommendation never became a final order of the court because Ms. Chapman objected[6] to it and spawned the proceedings that would lead to this appeal.

After August 23, 2018, when Colby turned eighteen, Mr. Chapman, on his own accord, began paying $880.00 per month in child support.[7] Mr. Chapman apparently arrived at the $880.00 per month amount based on the hearing officer's recommendation of March 29, 2018. Ms. Chapman's testimony confirmed that Mr. Chapman began paying $880.00 after Colby turned eighteen.

---

[5] At the hearing on May 19, 2020, Mr. Chapman's attorney argued that the hearing officer made an award of a specific amount for each child at the March 29, 2018 hearing officer's conference. This court notes that La.R.S. 9:315.22 supplies certain criteria, which if met, allow the obligor to unilaterally stop paying child support when a child reaches the age of majority. If the child support order provides for a certain amount to be paid per child, "the award for each child shall terminate automatically without any action by the obligor upon each child's attaining the age of majority[.]" La.R.S. 9:315.22(A). If the award of child support is in globo for more than one child, "the award shall automatically terminate without any action by the obligor when the **youngest** child for whose benefit the award was made attains the age of majority[.]" La.R.S. 9:315.22(B) (emphasis added). In this case, the court finds that the award of child support was in globo for two children and that the provisions of La.R.S. 9:315.22 do not apply.

[6] Appendix A(D)(4) of the Local Rules of Court, Thirty-First Judicial District, provides that: "[t]he Hearing Officer's recommendation is deemed a temporary order on all matters which shall be forwarded to the District Judge for consideration as a temporary order after the objection period has expired." Then, Appendix A(D)(5) of the Local Rules provides that:

> If a written objection to the Hearing Officer's recommendation is timely filed by either party, the Hearing Officer recommendation shall be forwarded to the District Judge who may accept, reject, or modify it in whole or in part as a temporary order after the objection period has expired until a contradictory hearing can be had. Any such temporary order signed by the District Judge shall be considered interlocutory in nature.

In this case, the record does not reflect that any such temporary orders were issued. Where a party objects to the hearing officer's recommendation, that recommendation does not have an effect of a court order, and the local rules cannot modify La.R.S. 46:236.5 to do so. *Piccione v. Piccione*, 01-1086 (La.App. 3 Cir. 5/22/02), 824 So.2d 427.

[7] "The general rule in Louisiana is that a child support judgment remains in full force and effect until the party ordered to pay it has the judgment modified, reduced, or terminated by the court." *Ortlieb v. Webb*, 20-598, p. 4 (La.App. 1 Cir. 4/26/21) (unpublished opinion).

4

On September 20, 2018, the trial court issued written reasons for ruling which explained that the trial court would not reduce Mr. Chapman's child support obligation based on Colby's reaching the age of eighteen because Mr. Chapman did not offer any evidence of his income at the hearings held on May 1, 2018, and August 16, 2018. The trial court indicated that it would sign a judgment in accordance with its written reasons when one was presented.

The parties disagreed on the wording of the judgment. However, a judgment was prepared by Ms. Chapman's attorney and presented to the trial court. And, on January 2, 2019, the trial court signed that judgment, which dismissed Mr. Chapman's "Motion and Order for Contempt, Modification of Custody, Modification and Termination of Support Obligation, and Reimbursement Claims for Overpayment" with prejudice. The judgment clarified that all of Isabelle's dance-related expenses fell with the definition of extracurricular activities that the parties had to pay in proportion to their incomes.

On January 22, 2019, counsel for Mr. Chapman filed a "Motion and Order to Substitute Judgment" with regard to the January 2, 2019 judgment. The motion alleged that the trial court requested that a joint judgment be submitted with thirty days from a status conference held on December 11, 2018, and that Ms. Chapman's version of the judgment was signed before the expiration of the delay and in violation of Uniform Rules—District Courts, Rule 9.5. The trial court signed a judgment on January 23, 2019, which indicated that Mr. Chapman's "Motion and Order for Contempt, Modification of Custody, Modification and Termination of Support Obligation, and Reimbursement Claims for Overpayment" was denied after hearings held on May 1 and August 16, 2018. The written reasons dated September 20, 2018, are also referenced in this judgment. It is somewhat unclear what exactly is being

5

denied as "Denied" is handwritten over the portion of the judgment which states that Mr. Chapman's motions are dismissed.

Mr. Chapman's motion to substitute judgment was set for hearing on March 12, 2019, but the hearing was passed without date and never took place. The court minutes do not reflect that counsel for either party were present when the matter was called.

On August 26, 2019, Ms. Chapman filed an amended rule for arrearages and contempt.[8] Ms. Chapman alleged that Mr. Chapman failed to pay his share of dance expenses, dental expenses for the children, and expenses related to Isabelle's broken arm. She also alleged that Mr. Chapman was in arrears due to his unilateral reduction in his child support obligation in August of 2018. After Mr. Chapman's exceptions of no cause and no right of action with regard to the rule for contempt were denied, Mr. Chapman answered the April 23, 2018 rule and the August 2, 2019 rule. He also requested a modification of the child support order based on Colby's reaching the age of majority. Ms. Chapman disagreed with the hearing officer's recommendations, and the matter proceeded to a hearing on May 19, 2020. On June 8, 2020, the trial court signed reasons for ruling which stated that Mr. Chapman owed child support arrearages in the amount of $25,574.65, $747.00 to the dance studio, and $5,721.97 for medical bills. The trial court did not find Mr. Chapman to be in contempt of court.

On August 25, 2020, the trial court signed a judgment that reduced Mr. Chapman's child support obligation to $880.00 per month, retroactive to February 11, 2020 (*i.e.*, the date Mr. Chapman filed his answer to Ms. Chapman's rules for

_____

[8] On April 23, 2018, Ms. Chapman had filed a rule for arrearages and sought to have Mr. Chapman held in contempt of court. She alleged arrearages in the amount of $707.46 for his share of Isabelle's dance lessons and costume expenses as well as arrearages in the amount of $2,028.00 for his share of dental expenses incurred on June 13 and 14, 2017.

arrearages and again requested a reduction in his child support obligation based on Colby turning eighteen years old); ordered Mr. Chapman to pay $25,574.65 in child support arrearages; ordered Mr. Chapman to pay $5,721.97, representing his portion of certain medical expenses; ordered Mr. Chapman to pay dance-related expenses to Showstoppers Dance Studio; and cast Mr. Chapman with costs. It is from this judgment that Mr. Chapman appeals.

## III.

## STANDARD OF REVIEW

In a child support case, including one regarding a request for modification of a child support obligation, the standard of review is manifest error. *Moody v. Moody*, 19-642 (La.App. 3 Cir. 2/5/20) (unpublished opinion), *writ denied*, 20-523 (La. 9/8/20), 301 So.3d 35. Accordingly, "[i]n order for this court to reverse a trial judge's factual findings, manifest error must exist. Under a manifest error standard of review, this court can only reverse if it finds, based on the entire record, that there is no reasonable factual basis for the factual finding and that the fact finder is clearly wrong." *Id.* (citations omitted).

## IV.

## LAW AND DISCUSSION

The trial court ordered Mr. Chapman to pay $25,574.65 in child support arrearages. The trial court reached this amount by finding that: (1) Mr. Chapman's child support obligation was $1,626.00 per month as of the hearing officer's recommendations on July 7, 2016, which became the order of the court by judgment signed on July 18, 2016; (2) Mr. Chapman had been paying only $880.00 per month, resulting in an underpayment of $746.00 per month, since July 1, 2017; (3) the underpayment was made for thirty-one months and ten days, from July 1, 2017, through February 10, 2020; and (4) Mr. Chapman was in arrears of $1,906.65 as

7

determined at the hearing officer's conference on July 7, 2016 (which was noted to be an amount stipulated to by the parties).

Mr. Chapman argues that the trial court erroneously calculated the child support arrearages because it failed to make the reduction of child support to $880.00 per month retroactive to Mr. Chapman's initial modification request on November 29, 2017. This court finds that the trial court did not err in failing to make the reduction retroactive to November 29, 2017, because to do so would make the reduction effective nearly nine months before Colby reached the age of majority.

Mr. Chapman further argues that the applicable amount of child support was $1,331.00 based upon the hearing officer's recommendation of March 29, 2018. This court finds that the trial court did not err in failing to use $1,331.00 as the amount of the child support obligation because the March 29, 2018 recommendation did not become the order of the court due to Ms. Chapman's timely objection thereto. Mr. Chapman also objected to this recommendation.

We find that the trial court correctly found that Mr. Chapman's monthly child support obligation was $1,626.00 per month since no recommendation of the hearing officer made after July 7, 2016, was made the order of the court. We further find that the trial court correctly calculated the amount of the underpayment as $746.00 per month. We find that the trial court erred in calculating the arrearages based on thirty-one months and ten days of underpayment from July 1, 2017, because the testimony established that Mr. Chapman did not began paying the reduced amount of $880.00 per month until August of 2018. We find that Mr. Chapman was in arrears for seventeen months and seventeen days, from August 25, 2018, through February 10, 2020. Therefore, the correct amount of arrearages is $13,116.88 plus $1,906.65 for prior arrearages, for a total amount of $15,023.53, and we amend the judgment to reflect that Mr. Chapman owes this amount in child support arrearages.

8

Mr. Chapman argues that his share of extraordinary medical expenses should be limited to seventy-eight percent (78%) of those incurred by in-network providers pursuant to the stipulation of the parties on June 17, 2014.

The trial court ordered Mr. Chapman to pay $5,721.97 for his share of medical expenses and dance related expenses. This represents ninety percent (90%) of the following amounts: (1) $2,600.00 for treatment by Dr. Rawleigh Fisher, oral surgeon; (2) $1,890.00 for orthodontic expenses; (3) $1,037.75 for treatment by Dr. Michael Holland, orthopedic surgeon. The ninety-percent share was set by the hearing officer's recommendations of July 7, 2016, and is applicable to costs not covered by insurance. The parties stipulated that Mr. Chapman owed $747.00 to Showstoppers Dance Studio for his share of Isabella's dance-related expenses. For these reasons, we find no error in the trial court's ruling in this regard.

The final issue in the case is the request of counsel for Mr. Chapman that this court "admonish and/or sanction" Ms. Chapman's counsel for "unprofessional personal attacks" and disparaging remarks made in Ms. Chapman's brief on the grounds that such statements violate Uniform Rules—Courts of Appeal, Rule 2–12.2(C).[9] Ms. Chapman's attorney stated: "In almost 48 years of practicing law and trying numerous cases, the undersigned has never encountered anything near what has occurred in this case." This court notes the complaints of Ms. Chapman's attorney that counsel for Mr. Chapman has made this matter "extremely complicated, time-consuming[,] and expensive" and recognizes that his tone is less than courteous. We also note that counsel for Mr. Chapman made similar comments in her reply brief when she stated: "the actions of Counsel for Kayla Chapman

---

[9] Rule 2–12.2(C) provides that "[t]he language used in the brief shall be courteous, free from vile, obscene, obnoxious, or offensive expressions, and free from insulting, abusive, discourteous, or irrelevant matter or criticism of any person, class of persons, or any court, or judge or other officer thereof, or of any institution."

violated Rules 3.3 and 3.4 of the Professional Rules of Conduct. His actions further convoluted the record and prejudiced Jeremy Chapman. Kayla Chapman cannot take advantage of her attorney's improper and unprofessional actions."

A violation of Rule 2–12.2(C) "shall subject the author . . . of the brief to punishment for contempt of court, and to having such brief returned." While we do not think that the comments of Ms. Chapman's attorney rise to the level of sanctionable conduct, we remind both counsel that personal attacks on opposing counsel are prohibited and recommend that the tenets of Rule 2–12.2(C) be closely heeded in the future.

## V.

## CONCLUSION

For the foregoing reasons, we amend the judgment to reflect that the total amount of arrearages due from Mr. Chapman is $15,023.53. In all other respects, the judgment is affirmed. All costs of this appeal are taxed equally between the parties.

**AMENDED AND AFFIRMED.**

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION.
Rule 2-16.3 Uniform Rules, Courts of Appeal.